### THE BUENOS AIRES.

### THE JOHN A. BOUKER.

### THE N. Y. CENTRAL NO. 8.

#### (District Court, E. D. New York. November 29, 1902.)

1. COLLISION—VESSELS LYING AT END OF PIER—NEW YORK STATUTE.

Under the New York statute making it unlawful for a vessel to lie at the end of a pier, where she is liable to be injured by vessels entering the adjacent slips, under penalty of being denied recovery for such an injury, the fact that a vessel is so lying does not preclude a recovery for an injury caused by another vessel which is not at the time entering or leaving an adjacent dock.

2. SAME.

In clearing a slip in East river for a steamship, tugs placed a barge and canal boat outside of three other boats at the end of the pier below. The steamship, which was lying 400 feet off the ends of the piers, headed up stream, having decided not to dock at that time, swung around to go down the river, and in doing so struck the boats at the end of the pier, causing their injury. Held, that the tugs were not chargeable with fault contributing to the injury, which was due solely to the fault of the steamship in negligently going about as she did, instead of moving ahead before turning.

In Admiralty. Suit for collision.

James J. Macklin, for libelant.

Wing, Putnam & Burlingham (Mr. Forrester, of counsel), for the Bouker.

Butler, Notman, Joline & Mynderse (Mr. Brown, of counsel), for the N. Y. Central No. 8.

Convers & Kirlin (Mr. Kirlin, of counsel), for the Buenos Aires.

THOMAS, District Judge. An attempt to dock the steamship Buenos Aires on the upper side of pier 10 in the East river was abandoned after waiting some time for the slip to be cleared, the ebb tide meantime becoming too strong to permit its safe accomplishment, and thereupon the steamship, which was headed directly up the river, and several hundred feet off from the piers, ported to go about in the river upon her return to her anchorage in the North river, when her port quarter came in contact with a New York Central barge lying outside four other boats at the end of pier 9, causing damage to the Terrell, the fourth boat, whose owner brings the present action. The claimant of the Buenos Aires controlled and was entitled to the use of pier 10 and half the slip on each side of it. Before the steamship came up, the canal boat Terrell was lying in the slip north of pier

10, and the agent for the steamship company asked the harbor master that she be placed elsewhere. The latter ordered that she be taken to pier 6, where canal boats are usually stored. Thereupon the steamtug Bouker was engaged to take the Terrell to pier 6. The captain and mate of the Bouker state that the agent of the steamship company ordered the Bouker to get the Terrell out of the way, and mentioned pier 9 as a suitable place. The Bouker did take the Terrell, and left her outside of three boats at the end of pier 9, over which the steamship company had no jurisdiction; the captain of the Bouker stating to the Terrell's master that he would go back and get an elevator at pier 10, and upon returning would take the Terrell and carry her to pier 6. The Bouker carried the elevator to pier 6, but did not return for the Terrell. Hence, as regards the Terrell, the facts are that she was placed at pier 9 by the Bouker, and left with the expressed intention on the part of the captain of the Bouker to leave her no longer than would be necessary to go back to the slip above pier 10 and place the elevator. Later the New York Central tug No. 8 went to pier 11, outside of which a New York Central barge was lying, having been summoned to put her in the slip above pier 10 to load a schooner. Tug No. 8 found that the slip was crowded, and that she could not enter, and gave evidence that somebody, in apparent authority on the dock, suggested that the barge be placed at pier 9. Palmer, the agent in charge of the dock, states that he told the New York Central tug No. 8 not to get in the way, but did not direct that the barge should be placed at pier 9. It is claimed by the Buenos Aires that it was gross negligence on the part of the tug to place the New York Central barge and the Terrell at the end of pier 9 at the time when the Buenos Aires was seeking to make her dock, and was so close to pier 9. The statute makes it unlawful for a vessel to lie at the end of a pier, where she is liable to be injured by vessels entering the adjacent dock or pier, and the penalty is failure to recover damages for injury caused by any vessel entering or leaving any adjacent pier.

It will be observed that the statute makes it unlawful for vessels to obstruct the waters by lying at the end of wharves, except at their own risk of injury from other vessels entering or leaving any adjacent dock or pier. The injury in the present case did not arise while the Buenos Aires was entering or leaving the dock or pier. It appears from the evidence of the pilot of the steamship that the Terrell was in position when he arrived; that he took up his position headed directly up the river and 400 feet off from the pier, and that he remained in such position until he was prepared to go upstream and go around in the river; that he had determined, on account of the strength of the tide, not to dock his vessel, even before he saw anything of the barge; and that the accident occurred while he was swinging off into the river. Manifestly the statute has no application. Nor does it appear that at the time when the New York Central barge was placed outside of the Terrell the Buenos Aires was in such proximity as to make her presence there dangerous to herself or others, unless the Buenos Aires should enter the slip. Surely, the presence of the barge outside of the Terrell did not negligently

obstruct the Buenos Aires, in her attempt to go up the stream, round about into the North river, and go to anchorage, as she had determined to do it before the pilot even saw her. She had the usual opportunity to use the river, and simply came too close to the barge at the end of pier 10 in going about.

These views lead to the direction of a decree against the Buenos Aires alone, and a dismissal of the libel as to the other tugs.